This case is Village of Elliott v. Duane Wilson. That's case number 4130489 for the appellant. We have Jude Redwood and for the appellee, Allison Harrington. Ms. Redwood. May it please the court and counsel. In an order of less than one page, the trial court dismissed counts 1 through 6 of the defendant's counterclaim without any analysis of the law or cases that it used to justify the dismissals. Therefore, I'm left with a back to basics type of an argument here. I've argued in my brief the law and the cases relied on for the countercomplaint. The letters that were attached to the Elliott complaint from Attorney Allen Lee to defendant are inadequate to provide notice of what the ordinance is trying to regulate in this case. First of all, the letters didn't identify any particular vehicles, not by make, model, bin, serial number, license plate number, even by color. The counterclaim attached the ordinance and the ordinance requires notice of said vehicles. I made a point of this in the complaint because the ordinance, while it's fatally deficient really as an ordinance, it does make an attempt to alert the village that they have to give basic notice of these said vehicles that are alleged to be in violation of the ordinance. Now, if you've got one vehicle on your property, this isn't any kind of a problem at all. But in this case, Mr. Wilson has a home and he has an auto repair wrecking shop both in the village of Elliott and he has a part-time business registered with the state of Illinois where he does auto wrecking and repairs. He's a gearhead. He works on these high-performance cars. He testified at the trial that there's like ten vehicles inside of his shop building as well as various parts. So he wrecks the vehicles, he keeps the parts, the motors, the fenders, the starters, different things that he would need to rebuild other cars and storages them in that shop in downtown Elliott. The counterclaim simply alleged that his vehicles, the counterclaim alleged that his vehicles were not in violation of the ordinance. And counsel, just before you proceed further, can you comment on the propriety of asserting these claims via a counterclaim given the nature of the underlying action which is an ordinance violation which here resulted in the assessment of a fine? So you have what is a quasi-criminal proceeding, that being the ordinance violation, and claims for relief in the counterclaim that are compensatory in nature. Is it appropriate to have these brought via a counterclaim as opposed to having it be an original action in another court, same court, different case? Justice Harris, I don't see any problem. Certainly neither the court nor opposing counsel brought up any problem about asserting these as a counterclaim in regards to the village of Elliott and Mr. Mott. I would respectfully disagree with the court that this is any kind of quasi-criminal case, although that's a term that's loosely used. The Supreme Court and now the Supreme Court rules agree that an ordinance violation case that asks for a fine only is not quasi-criminal, it's strictly civil in matter. So I didn't see any problem with bringing a counterclaim and I haven't seen any law from the other side challenging the counterclaim on that in regards to the village and Mr. Mott, the mayor. The court used the Tort Immunity Act which gives local governmental actors immunity only for torts, not for Section 1983 claims. I've cited the law at several places in my brief for that proposition. Therefore, the dismissal of Counts 1, 2, 3, and 6 was not authorized under the Tort Immunity Act. The torts alleged in Counts 4 and 5 were alleged to be willful and wanton and that was more fully explained in the counter-complaint, the Count 3, the Olick claim. The dismissal for failure to exhaust remedies shows really a misunderstanding of Parrott v. Taylor. And in Redwood v. Lerman, which I do rely on heavily because it's the law in this circuit, it's the law in Illinois, explains Parrott v. Taylor. First of all, Parrott, if it applies at all, applies only to 14th Amendment due process claims. It does not apply to a Fourth Amendment claim and it does not apply to a challenge to the ordinance as unconstitutional. It does not apply to the trespass, the conversion, or the equal protection complaint. It only applies to deprivation of property without due process claims. Second, acts done pursuant to a municipal policy are not random and unauthorized. It can't be random and unauthorized. And as I pointed out in my brief, in another case called Wilson, the Parrott just simply doesn't apply to the application of an ordinance. And third, the ordinance lacks any procedural safeguards that are required by due process. So we're also challenging the ordinance itself on due process grounds. And as I stated, this notion of failure to exhaust remedies has nothing at all to do with a Fourth Amendment claim of illegal seizure in count two, and this court recognized that in Redwood v. Lerman. Legislative immunity. The court dismissed the counter-complaint under legislative immunity. Legislative immunity either under the Court of Immunity Act or in a general immunity for Section 1983 applies only to acts that are legislative in nature, such as proposing legislation, legislative debate, voting, or enacting legislation. The enforcement of an ordinance comes under the police power. It's not legislative. This court in Redwood v. Lerman discussed legislative immunity and indeed granted legislative immunity to the village attorney for his acts of introducing the legislation, but declined to apply legislative immunity for the actual enforcement of the ordinance because it's improper. The dismissal on legislative immunity in this case was improper because nowhere was any legislative activity challenged in this case. The mayor received qualified immunity. In order to overcome qualified immunity, the plaintiff has to allege and prove, number one, violation of a constitutional or statutory right, and number two, prove that the right was clearly established at the time. At the time that this complaint was pled, and still now, the Fourth Amendment claim was clearly established. The plaintiff pled that the vehicles were towed without a warrant prior to seizing them off private property. That comes straight from Redwood v. Lerman, that a warrant is required before seizing vehicles from private property pursuant to a municipal ordinance. Under the Fourteenth Amendment, also in Redwood v. Lerman, the property owner has to have due process. He has an absolute right to due process before the seizure, and the due process has to be something that alerts the homeowner to what it is that's being challenged. Here we have, first, the letters from Attorney Ellen Lee. These letters, again, don't describe any vehicles. And the letters say, if you don't bring your property into compliance, we'll do something. So everything in her letter is saying, all you have to do is comply with the ordinance. And here, I've sent you a copy of the ordinance so you know what to do to comply. So this is, while the ordinance says that the vehicles have to be disposed of or removed from the village, like the ordinance in Redwood, the village attorney takes a completely different tack, and in her letter says, all you have to do is get in compliance with the ordinance. So there's mixed signals here to the resident, and indeed the ordinance is challenged because there's really nothing in this ordinance that alerts either the village officials or the village resident about what this notice has to be. So due process was alleged properly, and by token of Redwood v. Lerman, but all the way back to Mullane, the right to due process of law before the seizure was clearly established that there aren't any qualified immunity. Now, if there are facts in dispute, qualified immunity can't be given on a motion to dismiss. The facts in dispute here are in regard to the notice, the specificity of the notice, what about this all you have to do is bring your vehicles into compliance. This case, as it came to the court, was, it really just showed a lack of any kind of notice that is constitutionally adequate to this homeowner about what the village wanted him to do, what vehicles they're talking about, bring it into compliance or get it out of the village. And indeed, I believe that the village officials also had no idea. Counsel, this case comes in kind of a strange posture, because the court granted a motion to dismiss. I think it was under 619, maybe in part under 615. And normally, that means that there are no factual questions out there, or at least in part means that. But here, we've actually had a trial. Can this court, in determining whether the trial court was proper in dismissing, consider the facts that came out at the trial? I struggle with that question myself, Justice Herner, and I believe that the court has to take the case as it presented at the motion to dismiss stage. That's my best reading of the law. But you're right, it's very different, because some of these facts were brought out at the testimony in the trial and the evidence. And would they resolve the issues? But I think this doesn't come up a lot, because in matters like this, I don't know about boys, but many times it would be a 304A finding, and we didn't have that here. Correct. I think I know the answer to this, but I'm going to pose it anyway. Does the fact that the court dismissed with prejudice invoke 304A? And I don't think it does, but do you have a position on that? My guess is it doesn't. It doesn't. And I didn't address this in my brief, because I didn't think it was an issue, but the law is really clear that you've got to have some kind of 304A wording. You don't have to say the words 304A, but you do at least have to say that there's no reason not to appeal this. Something from 304 there, and there was not any. And I carefully looked for that in order to appeal at the proper time. The count three equal protection was adequately pled based on well-established constitutional laws. And the problem here with qualified immunity is trying to figure out why the trial court granted it. And there isn't any figuring out why the court granted it. There should have been some kind of a memorandum from the court explaining for this court and for counsel to grapple with what the facts, what the law they were relying on. But it's really there of anything. It's just he gets immunity. We've also moved for a mistrial during the trial. Now I've never, I looked and looked for any kind of case law where the attorney in a civil case 11 times or even 10 times calls the plaintiff's exhibit a people's exhibit. I didn't find any case law, but I certainly did look for it. 11 times Mr. Lee, who was of course the state's attorney for over 20 years, called it the people's exhibit. He apologized. He said he wouldn't do it again. He admitted that it was wrong. One of the problems I really have with this is there were no admonitions whatsoever from the judge to the jury. The judge let it in. He didn't tell the jury to disregard what you just heard. Now you've heard the saying, well the bell was rung, the jury's heard it. The bell wasn't just rung here. Mr. Lee put on an entire concert trying to convince the jury, not only by the people's exhibit, but also by the other actions that he exhibited, the prosecutorial conduct and act that he did. Now I have to say again, this wasn't a quasi-criminal proceeding. Although there's mention of that and a lot of people call it that, but that, under the Supreme Court rules and under the Supreme Court cases, I wasn't able to find a case where an ordinance violation that's punishable by a fine only is quasi-criminal. It's civil. It's civil in nature and there's no possibility of jail in this case. Well, counsel, just on that, we don't need to make it into more than it is, but you say the rules indicate that it's civil in nature. Which rule? That's the 570 series. Okay, and what does it say? Without quoting it exactly, it says that you use a coded civil procedure. Proceeding, the procedure is civil, but the nature of the action is quasi-criminal. That's what the case law says. Is there anything in the rules or in case law that you've seen that suggests otherwise? I was taking it, Justice Harris, as since we're proceeding civilly, that it's a civil proceeding. I certainly didn't see anything that said it was quasi-criminal, that it was a quasi-criminal proceeding when it involves a fine only. So, that's the best I can tell you on that. In conjunction with acting like he was prosecuting a criminal case, Mr. Lee fabricated evidence, and this is in regards to the placement of the stickers. Which, hopefully that isn't too confusing, but he said and argued to the jury that all of the stickers were placed on side windows of the car, so this orange sticker that was on the back window of the truck obviously had to be the result of monkey business by Mr. Wilson somehow scraping off this sticker and reapplying it to the back window of the truck when Mr. Lee knew full and well that other stickers on vehicles that he didn't decide to proceed against were on the back window. So, he knew that all the stickers weren't on the side windows, yet he told the jury that all the windows were on the side windows. That's just not true, and he did this to show that the defendant, Mr. Wilson, was lying about this sticker that was on the pickup truck. The sticker on a big Ford pickup truck said, we're going to tow this Grand Am. A Grand Am is a little two-door sports car. It wasn't his pickup truck, so we're arguing that there wasn't any notice as to that pickup truck. Now, I'm arguing these points because for a mistrial, if the question of liability is close, then the court can declare a mistrial, and I would submit to the court that the question of liability was close. The plaintiff originally proceeded against five vehicles, a pickup truck, Mom's Mitsubishi car, a car hauler trailer, a Camaro, and a small utility trailer. The judge directed out the car hauler trailer because there was absolutely no notice on that. The jury came back with a verdict against the defendant on the other four vehicles, but post-trial, the judge reversed on the small utility trailer based on the fact that it wasn't a motor vehicle, and the plaintiff proceeded only under the inoperable motor vehicles statute. So that's how close it was. The jury was not understanding what was going on. Finally, there wasn't any fine paid for in the complaint. As a civil litigant, you're held to your pleadings. I think we all learned this early on because we plead it wrong and get burned in the end. For example, if you're a plaintiff and you don't deny affirmative defenses, you can go all the way through trial and get a directive verdict against you because you didn't deny your affirmative defenses. Here, the plaintiff in a civil proceeding never asked for a fine. Now that's a pleading rule. The case is structured within the pleadings, and he didn't plead for it. He plead for other things. The judge said, well, it's a matter of no surprise. No surprise doesn't cut it when you don't plead it. Maybe Mr. Lee is used to getting all of the consideration because he was a state's attorney, but in the civil context, you're held to your pleading under the Code of Civil Procedure. Counsel, suppose we agree with you that the trial court erred in dismissing one or more of the constitutional claims you made in your counterclaim. What relief are you asking for should we make that determination, and what would be the proper relief? We're asking to reverse the dismissal of the counterclaim and let it go on for trial on the counterclaim. Well, what happens if we disagree with you on the other arguments you've made about what the city attorney references, the people's exhibit, etc.? What do we do with that aspect of the case? Well, if you disagree with me as far as the mistrial or the fine, then we're stuck with that. Any of the evidence that was presented at that trial is, of course, available for impeachment purposes at the trial. But I believe that we are definitely entitled to a trial on our constitutional violations in the illegal towing, which wasn't really addressed at the ordinance case. The ordinance case addressed, did he violate the ordinance? Not whether the towing was illegal or legal or even talked about. That wasn't allowed to be talked about. Nothing about the unequal enforcement was allowed in. That was motion and lemony. We couldn't even talk about it. Okay, thank you. You will have your vote. Ms. Harrington. May it please the court, counsel, thank you. In regards to this matter, your honors, we're here today and I think the factual basis of this case is very important because the Redwood case has obviously been talked about in the briefs and in argument on an extensive basis. What we have here is a unique circumstance. We have a case where the mayor filed a complaint or the village filed a complaint seeking to enforce the ordinance. In that complaint, the village alleges in that complaint that it did in fact tow two vehicles that it believed to be, that the mayor believed to be, were on public property. As a result of that, we get the counterclaim. The issues in this case go back to the ordinance itself. And what we have is on December 23, 2009, and this is the first thing that counsel brought up, is the letter that attorney Lee sent to Mr. Wilson. And they claim that that letter is insufficient notice. Well, that letter specifically talks about that you do have property or you do have vehicles on your property that are in violation of the ordinance. Agreed, it doesn't specify exactly which vehicles were in violation, but allows for Mr. Wilson to attend a hearing on January 12, 2010 to address the situation. Counsel, let me ask you this. Let's talk about that letter that he received. You said a hearing, first of all, to address it. Isn't it correct that basically they sent him a letter saying you can appear and tell us how you're going to fix this? It assumed that he was in violation. There was no process pre-deprivation where he could say I'm not in violation and here's why. That was non-existent, correct? Well, I would say, Your Honor, in regard to that, that the letter allowed him to come to a meeting to address whether he was in violation or not. What did the letter say? What's the exact language of the letter? The exact language at that point says, well, it was brought to my attention that your property is not in compliance with the Elliott Ordinance, but governing the keeping of inoperable motor vehicles on your property. I enclose a copy of the pertinent ordinance for your review. Into the next paragraph, the last sentence states, if you wish, you may attend the January 12th board meeting at 7 p.m. to present your plan to correct the situation. I see no reason why you cannot bring your property into compliance by the end of January. That is the language that is stated. And I understand what you're saying, but the reality is Mr. Wilson had the opportunity to go talk to the board about this and chose not to. Then what we have is several months later, the situation hadn't changed. And we have multiple vehicles that are tagged. And as a result of that process, there was another letter that was sent on March 10th that both attached to the complaint and to the counterclaim. And in that letter, it specifically states that please take notice that your failure to properly comply with the village ordinance regarding inoperable motor vehicles has resulted in your vehicles being tagged for removal pursuant to the ordinance. If the vehicles are not removed or brought into compliance within seven days of your receipt of this notice, the vehicles will be towed and you'll be responsible for towing and storage. Thereafter, not seven days, he was provided almost a month. He was provided until April 9th, 2010 to rectify the situation. And it was not. And two vehicles, which it is important in this case and distinguishes the red matter, two vehicles that the mayor, when directing or ordering that these vehicles be towed, he believed to be on public property over a public right of way. That gets into an argument that I'll get into in more detail, but goes directly to why qualified immunity would apply under these circumstances. But there were four vehicles towed. There were two in the complaint itself. And I was trying to stay with the allegations in the complaint simply because we're talking about a 2619 motion. But yes, in the counterclaim, there is an allegation that the red Mitsubishi was actually loaded on a trailer. I think it was the 96 trailer. And then that a utility trailer was also towed according to the counter complaint. In regards, though... Just so I'm clear on this, the complaint itself identifies two vehicles as having been towed. And yet the counterclaims for the towing of four, am I correct on that? Yes. Four vehicles? I would agree with that. I would say as to one of the trailers, the 96 trailer, I don't know that you can distinguish it from the red Mitsubishi because the red Mitsubishi was physically on the trailer at the time. Counsel, how many vehicles and how many trailers were removed from the property? Because that seems to be the distinction. At one point, they're called vehicles. Then at one point, it's broken down trailer versus vehicle. Well, according to the counterclaim, they do allege that there were four. And I believe she did use the word vehicles in her description in the counterclaim. You are correct that that later became an issue in post-trial motions, what is a vehicle under the statute, or the ordinance, excuse me, and whether a trailer falls underneath that ordinance. Counsel was correct in that after the verdict, the utility trailer was determined not to be under that ordinance. And so two vehicles were removed and two trailers? Correct. Correct, according to the counterclaim, yes. That's my understanding. Do you disagree with that? No, that's my understanding of the facts. I just know that what I'm looking at from when we're talking about a 2619 motion, there's a complaint that says two, and then there's a counterclaim that says four. I'm not factually distinguishing that for argument purposes. I would state, though, from a notice argument, when you have a vehicle that is tagged in the red Mitsubishi unequivocally as agreed to as being tagged, was on top of one of the trailers, rational, reasonable people can't not understand that if they don't take that vehicle off that trailer, that it's going to be towed too. How could you not? There's not a way to do that without damaging the person's property. So I don't think it would be unreasonable under the circumstances for the defenses that have been raised, the briefs, for that trailer to have been towed as part and parcel with the red Mitsubishi. Just for clarification, this was a combined motion, right? 2615, 2619? Correct, it was. The order itself, though, from the court, the language just refers to 2619. Right. Following up with one of Justice Turner's questions of Ms. Redwood, if, you know, it's an unusual fact situation here where you do have a subsequent trial, in looking at the motions to dismiss and the allegations, should we look at the evidence that was presented at trial in determining the propriety of granting the motions to dismiss? I am equally perplexed in that, Your Honor, because my reading of this is, for instance, there's been no appeal on the jury findings or the verdict in this case. Are we kind of backdooring attacking the jury verdict in this case, finding that three vehicles in particular violated the ordinance, by bringing forth the appeal in the manner that it has been brought forth? Well, I'll suggest one line of thought might be that pleadings frame the issues. The evidence that was produced at the time of trial was evidence that was relevant to the issues in the complaint that had survived the motion to dismiss. While there may have been evidence presented as to some issues, there certainly wasn't evidence presented on a lot of other issues that pertain to the dismissed counts. So, while there might be some evidence out there germane to some of these dismissed counts, there would have been quite a bit more evidence presented if the various counts that were dismissed had not been dismissed. And so, you can't rely exclusively on the evidence presented at the trial in determining whether or not there would have been facts sufficient to support those dismissed counts. And I would agree with that. I mean, obviously, there was evidence that was excluded at the trial based upon the rulings and the motions in Limine. And I would agree that, obviously, that there would certainly be lines of questioning that probably were not delved into because of that. However, from the standpoint of, for instance, qualified immunity, from, I believe, the face of the pleadings that are at issue in this case, the argument can be successfully made that the mayor was entitled to qualified immunity for his actions at the time. There are essentially claims being brought under the 14th Amendment and under the 4th Amendment. It's our position, and I believe case law supports, that when you have multiple letters, and one letter actually giving you the entirety of the ordinance at issue, and a second letter advising you several, roughly two months later, two and a half months later, that your vehicles have now been tagged and that you have seven days to remove them, you had the opportunity to do something and nothing was done, and that then thereafter, a month later, the vehicles are towed, that notice has been provided to this person. The notice of the requirements of the ordinance have been provided to this person, and therefore there cannot be a 14th Amendment due process claim. And I believe that the case law that we've relied upon at the motion to dismiss stage and in the appellate stage supports that. Specifically, as to the 4th Amendment claim, again, as to qualified immunity, what we're talking about is we have to think about a public official, did they act objectively reasonable? Well, in removing certain vehicles, the mayor made the decision that he believed it was on public property. There is no constitutional right that prohibits a local public entity or any state actor from towing a vehicle illegally parked on public property. Therefore, if there's no constitutional violation, then Mayor Mott acted objectively reasonably under the circumstances before us. But isn't that a factual issue? I think the facts are bared out by the complaints, the complaint and the counterclaims. And it's about what the actor, the objective reasonable test, which is a question of law for the court to determine. And so, from the standpoint of, well, the first question has to be asked, is there a constitutional violation? Well, there can't be a constitutional violation if, under the circumstances, that public actor believed that it was public property versus private property. And that's why, at the beginning, I wanted to make it clear that this is a case that's very different from Redwood. This is a case where, yes, there were towings done, and those towings were admitted to in pleadings, but it was based on the idea that they were towed because they were on public property. Thereafter, the village then actually filed suit with the court to try to enforce its ordinance, which is, I don't know, more of a way to establish or preserve due process than to... File it before you tow. That would be the ideal situation. That is, unfortunately, not my set of circumstances here. I hate to interrupt you, but I've got to go back to this because I think it might be important as I review this after orals are completed today. One of the vehicles was on a trailer, correct? Correct. Well, was the trailer towed with the vehicle on the trailer? That's my understanding, yes. Or were there two separate towings for the trailer and the vehicle? No, my understanding is that they were towed. Okay, so we have one motor vehicle that was towed, and then we have a trailer with the motor vehicle on it that was towed. Correct. And then there was the small trailer that was towed, but that really isn't an issue for purposes of this appeal, as I understand it. That's my understanding. Okay. All right, please go back to your argument. Okay. I know I'm running out of time here, but I just wanted to kind of get back to this idea that this case can't simply be determined by the Redwood matter, that the Redwood matter is factually on its face limited, and it's limited to those set of circumstances. This case has its own very distinct, unique set of circumstances, and that at the end of the day, there are not the constitutional issues that were brought forth in the specific Redwood matter. I appreciate your attention here and thoughtful questions. Okay, I see no further questions. So we will now have rebuttal, please. Here were four vehicles towed from Mr. Wilson's property. His pickup truck, that pickup truck was parked right up in his driveway on his garage. They claim it was on public property. He claims it was on private property. There was his mom's Mitsubishi. When the Mitsubishi was tagged, it was sitting on the ground near his shop. He got the tag, he saw it on there, he read the ordinance, and an exception to the ordinance is a vehicle that's being held for expeditious repair, which that Mitsubishi was. His mom's Mitsubishi was fixing it. So in order to become in compliance with the ordinance, he put it up on top of his car hauler trailer. He parked his car hauler trailer right next to his building within 12 inches of his shop in downtown Elliott. And he thought that would alert them that he was in compliance with the ordinance because he put it up on the trailer. So there's two vehicles there that was towed, the Mitsubishi and the car hauler. They didn't take the Mitsubishi off the car hauler. They just towed the whole thing away. And then the small utility trailer, that's at issue too because it's an illegal towing. It's a container for recycling. And one of the pictures shows that the mayor has a big, huge trailer on his front lawn filled with recycling. And the evidence would be that anybody was free to bring their metal recycling and dump it in his trailer, which he makes money off of. So that's part of our protection claim, which got dumped. Anyways, there's four at issue. Now, the fact that the argument that the Redwood case is limited to its facts, there were different facts in that case. But underlying that, there is the Fourth Amendment. The Fourth Amendment requires a warrant before the seizure of a vehicle off private property. So all they had to do was go up to Judge Pacey and say, we want a warrant to get these vehicles. Would he have granted it? Sure he would. That's why we subbed him out of the trial, but that's beside the point too. They would have got their warrant. Wait a minute, counsel. The Redwood case, which I know you're very familiar with, says the following. This is in their Fourth Amendment discussion. Redwood's property was taken from, and here's the quote, allegedly within the curtilage of her home. The distinction is crucial. The curtilage, the land immediately surrounding and associated with the home, warrants the Fourth Amendment protections. We don't have that here. The acquired didn't live at either of the premises here, right? So we don't have the curtilage of the home or even a residence to consider here, and it's clear that in Redwood, which you successfully argued, that was crucial. That is the exact quote. The distinction is crucial. That would be the distinction between public property and private property, and these were both his private property where he didn't live 24-7 on either one of them, but he did the home. The home, the evidence would show, is a residence where he was rebuilding it after a fire and came there when he could from working, and the shop was private property. I have a case in there that says that the Fourth Amendment applies to business property as well as residential property. Is that in your brief? Yes. Okay. What's the name of it? No, I can't give it to you. Sorry. So when the Fourth District back in 2002 used the term curtilage, what did that mean? The curtilage is... If it was crucial then, is it crucial today for this court to consider? It's crucial today too, and it's the area around your personal property that's not public property. So that would be a factual issue, and it can't be decided on a motion to dismiss. It's got to go to trial. The judge didn't discuss, and that's one of the big problems here, is that the judge didn't really discuss the issues, why he dismissed it. He just said, I dismiss it under this, this, this, this, and this, without giving us any clarification about why. But that would definitely be a factual issue. You can't dismiss if there's a factual issue in dispute. But with respect to the immunity, if the mayor was under the impression that it was on public property, which is what opposing counsel is arguing, what impact does that have? Does that change the analysis? Are we looking to what state of mind he was in at the time he made the decision as mayor to order the towing? No, you can't look at what his state of mind is, because any official could at any time say, well, my state of mind was that this was totally legal. You have to go on the facts, and that's why there's the interjection of the detached and neutral magistrate, because the magistrate would say, well, tell me, why is this on public property? Why do you say it's on public property? Somebody then, besides the official, or in many cases a police officer, who's there making split-second decisions, this is turned over to a detached and neutral magistrate who can really look at these questions and see whether the warrant should be issued or not. If there's no other questions, I think my time is up. Thank you. Thanks to both of you. The case is submitted, and the court stands in recess.